FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 27, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LAURIE C.,[1]

              Plaintiff,

     v.

ANDREW M. SAUL, THE
COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

No.   4:19-CV-5186-EFS

**ORDER GRANTING IN PART AND
DENYING IN PART BOTH
PARTIES' SUMMARY-JUDGMENT
MOTIONS AND DIRECTING AN
IMMEDIATE AWARD OF
BENEFITS FOR AN ADDITIONAL
CLOSED-DISABILITY PERIOD**

       Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Laurie C. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) discounting Plaintiff's symptom reports; 3) improperly determining that the impairments did not continue to meet or equal a listed impairment after August 1,

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 12 & 13.

2016; and 4) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at steps four and five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants in part and denies in part both summary judgment motions, finding that the closed period of disability should extend to August 21, 2017, but thereafter the ALJ's RFC was supported by substantial evidence.

## I.     Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of July 21, 2015.[18] Her claim was denied initially and upon reconsideration.[19] A telephonic administrative hearing was held before Administrative Law Judge Stewart Stallings.[20]

The ALJ issued a partially favorable decision, finding that Plaintiff met Listing 12.04 for the time period from July 21, 2015, through August 1, 2016, but

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 185-91.

[19] AR 119-21 & 123-25.

[20] AR 46-90.

thereafter denied Plaintiff's disability claim.[21] Specifically, the ALJ made the

following findings:

- Plaintiff met the insured status requirements through December 31,

  2021;

- Step one: Plaintiff had not engaged in substantial gainful activity

  since July 21, 2015, the date Plaintiff became disabled;

- Step two: Plaintiff had the following medically determinable severe

  impairments: bipolar disorder, anxiety, and personality disorder;

- Step three: From July 21, 2015, through August 1, 2016, Plaintiff's

  impairments met the criteria of listing 12.04 (and was disabled) but

  thereafter, Plaintiff did not have an impairment or combination of

  impairments that met or medically equaled the severity of one of the

  listed impairments;

- RFC: After August 1, 2016, Plaintiff had the RFC to perform light

  work:

  > as [Plaintiff] is able to lift and carry twenty pounds
  > occasionally and ten pounds frequently and sit for up to
  > eight hours in an eight-hour workday with normal breaks.
  > However, [Plaintiff] is able to stand or walk for about four
  > hours in an eight-hour workday with normal breaks.
  > [Plaintiff] requires a sit/stand option meaning [Plaintiff]
  > must be allowed to change from a standing position to
  > sitting position or vice versa every thirty minutes for up to
  > five minutes while remaining at the workstation. [Plaintiff]
  > can never climb ladders, ropes, and scaffolds. [Plaintiff]

---

[21] AR 17-40.

must avoid all use of moving or dangerous machinery and exposure to unprotected heights. [Plaintiff] is limited to work in a low stress environment meaning an environment with no production rate pace, no customer service dealing with angry or unhappy customers, and no sales quotas as well as no work requiring a work-related circumstance that could be dangerous to [Plaintiff] or others such as security.

- Step four: considering Plaintiff's RFC after August 1, 2016, age, education, and work history, Plaintiff could perform past relevant work as a personnel clerk and accounting clerk; and

- Step five: considering Plaintiff's RFC after August 1, 2016, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as payroll clerk.[22]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the testifying psychological opinion of Margaret Moore, Ph.D.; and

- little weight to the opinions of the State agency psychological consultants Michael Regets, Ph.D. and Dan Donahue, Ph.D., and the opinion from Plaintiff's treating psychiatric nurse practitioner, Daniel Pitts, ARNP.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her

---

[22] AR 25-35.

statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[23] AR 32.

[24] AR 1-6.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

### A.    Medical Opinions

Plaintiff challenges the ALJ's assignment of limited weight to Daniel Pitts, ARNP's treating psychiatric opinion.

---

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant.[33] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[34] The opinion of an "other" medical source[35] may be rejected for specific and germane reasons supported by substantial evidence.[36] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[37]

---

[33] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[34] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[35] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[36] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[37] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The parties agree that Mr. Pitts, a psychiatric nurse practitioner, was an "other source." Mr. Pitts treated Plaintiff since August 2015 and diagnosed Plaintiff with bipolar 1 disorder.[38] In November 2018, Mr. Pitts issued a mental residual functional capacity assessment, opinion that Plaintiff was:

- Mildly limited in her abilities to work in coordination with or proximity to others without being distracted by them, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness;

- Moderately limited in her abilities to carry out very short simple instruction; sustain an ordinary routine without special supervision; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting;

- Markedly limited in her abilities to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within

---

[38] *See, e.g.*, AR 355-56, 664-65, 628-29, & 613-14.

customary tolerances; make simple work-related decisions; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others; and

- Severely limited in her abilities to understand and remember detailed instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and travel in unfamiliar places or use public transportation.[39]

As to the "B" criteria of mental listings, Mr. Pitts opined that Plaintiff was moderately limited in her abilities to understand, remember, or apply information; interact with others; and adapt or manage herself; and extremely limited in her ability to concentrate, persist, or maintain pace.

The ALJ gave little weight to Mr. Pitts' treating opinion because it was inconsistent with the medical evidence of record, including Mr. Pitts' treatment notes indicating Plaintiff had stabilized.[40] While inconsistency with the medical record, including treating notes, is a germane reason to discount an "other source" medical opinion,[41] the ALJ simply cited to one administrative record "Exhibit 12F"

---

[39] AR 753-56.

[40] AR 32.

[41] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the

to support his finding that "Mr. Pitts' own treatment notes indicat[ed Plaintiff] has stabilized." The ALJ did not identify which of Mr. Pitts' treatment notes indicated that Plaintiff had stabilized or what observations or medical findings in Exhibit 12F indicated that Plaintiff had stabilized. Nonetheless, the Court is tasked with reviewing Exhibit 12F, along with the entire record, to determine if the ALJ's finding that Plaintiff had stabilized—and therefore had medically improved—is supported by substantial evidence. If so, Plaintiff's stabilization would be inconsistent with Mr. Pitts' extreme 2018 opinion and would be a germane reason to discount Mr. Pitts' opinion.

Exhibit 12F is comprised of Plaintiff's progress notes from Lourdes Counseling Center from January 20, 2016, to December 14, 2017, and includes progress notes from Mr. Pitts, many treating social workers and counselors, and the case manager.[42] The records reflect that, as Plaintiff's medications were adjusted and she received counseling, her bipolar symptoms continued to wax and wane following her release from her most recent inpatient treatment for bipolar disorder in the fall of 2015. Reviewing medical expert Margaret Moore, Ph.D.—to whose opinion the ALJ gave great weight—opined that Plaintiff's symptoms were minimal and reflected improvement. In this regard, Dr. Moore testified:

_____

quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole).

[42] AR 605-752.

[O]nce we get into the middle part of 2016, and moving forward, I think the record really speaks fairly clearly to stability. When she sees the nurse practitioner [Mr. Pitts], and I'm going to point those out particularly because I suspect that the medical source document that you received late is going to probably come into question, but, the nurse practitioner notes cover about March of 2016 to the present, and most of those notes, and I'm talking about Exhibit 12-F now, most of those notes are really indicating stability.

Her medication adjustments are relatively minor, and her primary complaint has to do with motivation.

So the other aspects of her treatment at Lourdes have to do with what I would characterize as monitoring, support, and making sure that she was taking her medicines, and not needing to go back to the hospital.

And much of the current symptoms of note have to do with difficulty with her husband's health, some family issues related to her daughter, and kind of what I would call life stuff.[43]

Dr. Moore and the ALJ then discussed that a period of disability had to last at least one year. Dr. Moore also testified that the treatment notes reflected that by July 2016 Plaintiff's progress was quite positive.[44] Yet, Dr. Moore—like the ALJ—did not identify what observations or medical findings reflected stabilization rather than waxing and waning of Plaintiff's bipolar symptoms. For instance, the treatment notes reflect observed crying, being distraught, rapid speech, tremors,

---

[43] AR 60.

[44] AR 65-66.

disheveled appearance, impoverished thought, inability to remember how to crochet, and reported sleep difficulties.[45]

     These records—which formed the basis of Dr. Moore's opinion—do not serve as substantial evidence to support the ALJ's finding that Plaintiff had stabilized by August 1, 2016. Nonetheless, the Court finds that the records, namely Mr. Pitts' treatment records (the records on which the ALJ stated he relied on) show that Plaintiff did stabilize and achieve medical improvement by August 21, 2017. For instance, by June 2017, Plaintiff was doing activities she had previously enjoyed such as reading, crocheting, and coloring.[46] Also, in June 2017, she began attending a group therapy session.[47] In July 2017, she reported that she was able to perform household tasks for five minutes, noting it was difficult but doable.[48] Then finally, on August 21, 2017, Mr. Pitts' treatment goals for Plaintiff shifted from "*attain and maintain* stability of moods [as well as remission of depressive symptoms]" to

---

[45] AR 539, 541, 545, 658, 682, 619, 750, 719, 598, 724, 706, 622, 640, 744, 746, 607, & 615.

[46] AR 691.

[47] AR 693.

[48] AR 656-57.

simply "*maintain* stability of moods as well as remission of depressive symptoms."[49]

While Plaintiff was observed to have limited attention to hygiene in the months that followed August 2017 and Mr. Pitts also noted a concern about mania in November 2017,[50] the Court finds there is substantial evidence in the record to support the ALJ's finding that Plaintiff's period of closed-disability ended, not on August 1, 2016, as the ALJ found, but on August 21, 2017. Mr. Pitts' treatment notes—the notes on which the ALJ indicated that he relied on for his finding that Plaintiff had stabilized—provides substantial evidence to support the ALJ's finding that Plaintiff had medically improved and therefore no longer satisfied Listing 12.04 as of August 21, 2017.[51] With this modified closed-disability end date, the

--------------------------------------------------

[49] *Compare* AR 355 (Aug. 21, 2015); AR 542 (Dec. 31, 2015); AR 560 & 696 (Feb. 18, 2016); AR 639 (March 31, 2016); AR 641 (May 16, 2016); AR 608 (Sept. 5, 2016); AR 606 (Sept. 30, 2016); AR 663 (Oct. 18, 2016); AR 735 (Nov. 1, 2016), AR 610 (Nov. 29, 2016); AR 655 (May 18, 2017); & AR 726 (June 30, 2017); *with* AR 629 (Aug. 21, 2017) & AR 614 (Nov. 27, 2017) (emphasis added).

[50] AR 613, 650, 680, 707, & 717.

[51] By extending the closed-period of disability from August 1, 2016, to August 21, 2017, the Court is not substituting its judgment for the ALJ's judgment but instead is relying on the ALJ's own reason for discounting Mr. Pitts' opinion—that Plaintiff's stabilization is inconsistent with Mr. Pitts' extreme opinion in 2018.

ALJ's decision to discount Mr. Pitts' opinion is supported by germane reasons and substantial evidence.[52]

## B.    Plaintiff's Symptom Reports

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[53] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[54] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with her improvement with treatment, the objective medical evidence, and Dr. Moore's medical opinion.[55]

Consistent with the discussion above, the Court finds the ALJ's decision to discount Plaintiff's statements is supported by substantial evidence after August

---

[52] *See Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016).

[53] *Molina*, 674 F.3d at 1112.

[54] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[55] AR 31-32.

21, 2017. First, the treatment notes, particularly Mr. Pitts' treatment notes reflect that Plaintiff's mental health stabilized by August 21, 2017, due to medication management and counseling. This was a clear and convincing reason to discount Plaintiff's reported disabling symptoms after that date.[56]

Second, although Plaintiff's symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence,[57] medical evidence is a relevant factor in considering the severity of the reported symptoms.[58] As discussed above, after August 21, 2017, the ALJ reasonably found that Plaintiff's reported disabling symptoms were inconsistent with the medical evidence. The treatment records after that date reflect, in part, the following: fair grooming and appropriate interaction with case manager; participation in group discussion, attentive, and engaged; well groomed and appropriately dressed with normal eye contact and average speech, congruent mood and affect, and linear and goal-directed thought processes; anxious affect with congruent mood and dressed appropriate to weather; blunted affect but better sleep and progress with being on a schedule; fair grooming and attentive throughout group session; friendly and appropriate with group facilitators and

---

[56] *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

[57] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[58] *Id.*

peers and attentive throughout.[59] As Plaintiff highlights there are also records that reflect limited attention to hygiene and a concern about mania.[60] However, it is the ALJ's role to weigh the conflicting evidence. After August 21, 2017, the ALJ's finding that Plaintiff's reported disabling symptoms were inconsistent with the objective medical evidence is reasonable and supported by substantial evidence.

The ALJ also relied on Dr. Moore's review of the treatment records and opinion that Plaintiff's continued reported disabling symptoms were inconsistent with the record after the closed period of disability. For the above-given reasons, the ALJ's reliance on Dr. Moore's opinion is supported by substantial evidence after August 21, 2017. This was a clear and convincing reason to discount Plaintiff's testimony about the severity of her symptoms after that date.[61]

## C.   Step-Three Listings

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet Listings 12.04, 12.06, and 12.08, singly or in combination, following the closed period of disability, which the ALJ found ended on August 1, 2016.

---

[59] AR 742, 690, 694-95, 650-51, 707-08, 677, & 734.

[60] AR 650, 707, 613, 680, & 717.

[61] *See Martinez v. Astrue*, 261 Fed. App'x 33, 35 (9th Cir. 2007) (relying on inconsistency with supported medical opinions as a basis to discount a claimant's symptom reports).

Listing 12.04 disorders, which include depressive, bipolar, and related disorders, are "characterized by an irritable, depressed, elevated, or expensive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning."[62] Symptoms and signs can include "feelings of hopelessness or guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria and social withdrawal."[63] The impairment must also meet paragraph B and C criteria. Paragraph B criteria is met if the impairment results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[64] And paragraph C criteria are met if the mental disorder is serious and persistent, i.e., there is a medically documented history of the existence of the disorder over a period of at least two years and the claimant relies on ongoing medical treatment to diminish the symptoms and signs

---

[62] 20 C.F.R. Pt. 404, Subpt. P, App 1.

[63] *Id.*, Listing 12.04.

[64] 20 C.F.R. § 404, Subpart P, App. 1.

of the mental disorder, and despite the ongoing treatment the claimant has only achieved marginal adjustment.[65]

Listing 12.06 includes anxiety and obsessive-compulsive disorders and criteria A, B, and C must be met. Listing 12.08 includes personality and impulse-control disorders, and criteria A and B must be met.

The ALJ found that Plaintiff met Listing 12.04 from July 21, 2015, through August 1, 2016.[66] The ALJ determined Plaintiff stabilized given medication adjustments and therapy. For the reasons discussed above, the ALJ's finding that Plaintiff stopped satisfying Listing 12.04 on August 1, 2016, is not supported by substantial evidence. Instead, substantial evidence supports the ALJ's finding that Plaintiff stopped meeting Listing 12.04 on August 21, 2017, when Mr. Pitts' treatment notes reflect that Plaintiff stabilized given the change in treatment goals, along with the noted improvement in the other treatment records.

As discussed above, Plaintiff fails to establish the ALJ erred in his interpretation of the evidence, including Plaintiff's symptom reports and the medical opinions, after August 21, 2017. Accordingly, although the record includes evidence indicating Plaintiff continued to be affected by her bipolar and other mental health impairments after that date, the ALJ reasonably found that Plaintiff

---

[65] 20 C.F.R. 404, Subpart P, App. I, Listing 12.00.G.

[66] AR 26.

medically improved and therefore no longer satisfied Listing 12.04 (or satisfied 12.06 or 12.08) after August 21, 2017.

**D.    Steps Four and Five**

Plaintiff argues the ALJ failed to properly incorporate all her limitations into the RFC and therefore relied on incomplete hypotheticals when assessing whether Plaintiff could perform work at steps four and five. Specifically, Plaintiff argues the hypothetical failed to account for Plaintiff's limitations of being off-task and unproductive 20 percent of the time and unscheduled absences occurring one or two days per month, as opined by Mr. Pitts and reported by Plaintiff. This argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record for the RFC period after August 21, 2017. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[67]

**E.    Remand**

Remand for an award of benefits for the extended closed period of disability from August 2, 2016, to August 21, 2017, is required. The record has been fully developed in this regard—the ALJ found that Plaintiff was disabled until she was stabilized and there is substantial evidence in the record that Plaintiff attained stability by August 21, 2017. No useful purpose would be served by further

---

[67] *See Magallanes*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

administrative proceedings.[68] Therefore, the Court directs that on remand an immediate award of benefits be made for the period from August 2, 2016, to August 21, 2017, during which Plaintiff met or equaled Listing 12.04.

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED IN PART AND DENIED IN PART**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED IN PART AND DENIED IN PART**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits from August 2, 2016, through August 21, 2017.

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 27th day of March 2020.

_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge

---

[68] *Garrison*, 759 F.3d at 1021; *Harman v. Apfel*, 211 F.3d 1172, 1175-79 (9th Cir. 2000).